396 S.E.2d 453

**Anna Jean TALLMAN**

v.

**Clay S. TALLMAN.**

**No. 18479.**

Supreme Court of Appeals of
West Virginia.

July 25, 1990.

---

Harry A. Smith, III, Busch, Jory, Smith & Talbott, Elkins, for Anna Tallman.

R. Sue Core, Elkins, for Clay Tallman.

**PER CURIAM:**

This is an appeal by Anna Jean Tallman from an order of the Circuit Court of Randolph County dividing and distributing property in a divorce proceeding. On appeal, the appellant claims that the trial court committed a number of errors relating to a 115-acre tract of land owned by her and her former husband, that the court erred in awarding her former husband one-half the value of her pension fund, and that the court should have declared $5,000.00 in savings bonds to be her separate property.

She also claims that the trial court erred in dividing certain securities allegedly converted by her former husband. After reviewing the record, this Court believes that the trial court did err in the treatment of the 115-acre tract of land and in its treatment of the savings bonds and reverses on those grounds.

The appellant and Clay S. Tallman were married in September, 1949. Prior to the marriage, Mr. Tallman had acquired substantial assets through inheritance from his grandfather and through accumulation of income from his inherited assets.

Shortly after the marriage, the appellant and her husband purchased a tract of land containing approximately 115 acres located in Randolph County, West Virginia. The land was a working farm, and for the land, the farm equipment, and the livestock the parties paid approximately $25,000.00. The land was acquired in the names of both parties as joint tenants with the right of survivorship. According to evidence adduced during trial, a substantial portion of the purchase price, as much as $20,000 of the $25,000 purchase price, was provided by the appellant's husband from the sums which he had accumulated prior to the marriage. The residue was borrowed from his uncles.

For approximately a year after buying the farm, the appellant's husband worked for the federal government and also worked on the farm. The appellant worked as a housewife and likewise worked on the farm.

In 1951 or 1952, the appellant's husband began devoting his full energies to the farm. The appellant continued to work as a housewife and worked on the farm until 1963, when she was employed by Davis & Elkins College to teach physical education.[1] From 1963 until the time of the divorce, the appellant taught consistently, and earned substantial amounts from Davis & Elkins College.

On May 25, 1984, the appellant filed for a divorce in the Circuit Court of Randolph

---

1. The record indicates that in 1952 the appellant contributed $100.00 to the marriage and that in 1956 she contributed $111.25. These sums apparently came from substitute teaching.

County. In the complaint, she prayed for a division and distribution of the parties' property in accordance with the provisions of the equitable distribution statute, *W. Va. Code,* 48–2–32.

By order dated August 15, 1986, the circuit court granted the divorce on the ground that the parties had lived separate and apart for one year next preceding the institution of the civil action. The court, at that time, reserved ruling on the property questions which were being examined by a commissioner.

By the time the parties were separated, they had acquired significant assets. The appellant's husband inherited additional assets property after marriage, and the appellant also inherited a substantial sum. Throughout the marriage the appellant's husband received income from his grandfather's estate. The parties at the time of their divorce owned a number of bank accounts and securities, as well as the 115–acre farm which they had improved since their marriage. They had also purchased additional land and various items of personal property. The appellant had contributed $63,656.54 to a retirement plan administered by the Teachers Insurance & Annuity Association, and her husband had acquired an annuity which was scheduled to pay him approximately $2,000.00 a month after he reached the age of sixty-five.

The commissioner appointed by the court took extensive evidence on the parties' property, on the parties' various inheritances, and on the parties' respective contributions to the marriage. On January 31, 1986, the commissioner filed a report in which he outlined a division of that property between the parties, which, among other things, granted the appellant's husband a two-thirds interest in the property which the parties purchased shortly after marriage.

After receiving the commissioner's report, the circuit court, by order dated April 9, 1987, affirmed it, over the exceptions of the parties, and adopted it in its entirety.

One of the appellant's principal claims on appeal is that the trial court erred in adopting the commissioner's recommendation that her husband be awarded two-thirds of the 115–acre tract which originally constituted the farm and that she receive only one-third. She, in essence, claims that the tract was marital property and should have been evenly divided.

■ Recently in syllabus point 4 of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), decided after the trial court's ruling in the present case, the Court indicated that:

> Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute.

The Court outlined the procedure to be followed in distributing marital property created by titling in joint names and indicated that an unequal distribution of such marital property may, under appropriate circumstances, be made. The court, however, indicated that before such a division may be made, the division order must aver to the factors in *W. Va. Code,* 48–2–32(c). The Court also said: "Where an unequal distribution is contemplated, there are additional adjustments that must be considered as set out in *W. Va. Code,* 48–2–32(d)(2)." [2]

**2.** The relevant sections of *W.Va.Code,* 48–2–32(d)(2), as set out in *Whiting,* provide:

(d) After considering the factors set forth in subsection (c) of this section, the court shall:

\* \* \* \* \* \*

(2) Designate the property which constitutes marital property, and define the interest therein to which each party is entitled and the value of their respective interest therein. In the case of an action wherein there is no agreement between the parties and the relief demanded requires the court to consider such factors as are described in subdivisions one, two, three and four, subsection (c) of this section, if a consideration of factors only under said subdivisions one and two would result in an unequal division of marital property, and if an examination of the factors described in said subdivisions three and four produce a finding that a party (A) expended his or her efforts during the marriage in a manner which limited or decreased such par-

*Whiting v. Whiting,* 183 W.Va. at 455, 396 S.E.2d at 417.

■ In the present case, the Court does not believe that the commissioner or the trial court followed the procedure outlined in *Whiting* in dividing the 115–acre tract or addressed all the factors required by *W.Va. Code,* 48–2–32(c) and *W.Va.Code,* 48–2–32(d)(2). Specifically, the commissioner's findings did not consider the fact that titling the tract in joint names presumptively made it marital property, and the commissioner and the court did not discuss the effect of the marriage on the income-earning abilities of the parties or, to any extent, address conduct by either party that lessened or increased the value of the marital property. Likewise, the findings did not address the parties' actions in the context of *W.Va.Code,* 48–2–32(d)(2). Consequently, this Court believes that under the rule in *Whiting,* in the absence of the consideration on all the factors, the unequal division of the 115–acre farm was not appropriate.

The appellant also challenges the procedure employed by the commissioner in establishing the value of the parties' farm.

During the proceedings before the commissioner, the appellant's husband submitted, *ex parte* copies of a real estate reappraisal report prepared by Cole, Layer, Trumble & Company for the State of West Virginia to be used in conjunction with the reassessment of the property for property tax purposes. The report indicated that the four parcels of property composing the farm, including the original 115–acre parcel, had a value of $66,300.00.

The appellant objected to the Cole, Layer, Trumble reappraisal figures and, upon motion of the commissioner and with the agreement of the parties, the court, pursuant to Rule 706 of the West Virginia Rules of Evidence, appointed Carl Spessert to appraise the real estate and personal property of the parties. Mr. Spessert was not a real estate appraiser or real estate broker, but he was aware of real estate values in the neighborhood.

Mr. Spessert examined the farm, and he valued the farm real estate at $75,000.00 and the personal property at $25,292.00. Upon learning of the figures, the appellant objected to the Spessert appraisal and moved that the commissioner grant approval for an expert to be retained by the appellant to appraise the property. The commissioner initially advised the appellant or the appellant's counsel that such approval would be granted, but it was never specifically granted. Then, on January 31, 1986, the commissioner submitted his report, In that report, he placed a value of $75,000.00 on the parties' farm real estate and $25,292.00 for the parties' farm personal property.

The appellant took exception to the commissioner's report and moved that she be granted access to the property so that she could have it appraised by an appraiser of her own choice. In conjunction with her motion for access, she submitted an appraisal prepared by Joe Basilone, a licensed real estate broker, who had analyzed comparable sales and who had determined that the farm real estate was worth $196,552.75.

The trial court conducted a hearing on the motions on June 30, 1986. For the purposes of this hearing, the appellant secured the attendance of Carl Spessert and Joe Basilone, and during the hearing she moved that she be allowed to cross-examine Mr. Spessert and that she be allowed to adduce the testimony of Mr. Basilone. She also moved that she be permitted to examine the commissioner. The court denied the appellant's motions and refused to per-

ty's income-earning ability or increased the income-earning ability of the other party, or (B) conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties, then the court may, in the absence of a fair and just alimony award under the provisions of section fifteen [§ 48–2–15] of this article which adequately takes into account the facts which underlie the factors described in said subdivisions three and four, equitably adjust the definition of the parties' interest in marital property, increasing the interest in marital property of a party adversely affected by the factors considered under said subdivisions three and four who would otherwise be awarded less than one half of the marital property, to an interest not to exceed one half of the marital property.

mit her to vouch the record. The trial judge stated that he had conferred with the county appraiser and with the deputy appraiser and that he had compared the Spessert appraisal with the Cole, Layer, Trumble reappraisal and was satisfied after such inquiry that the Spessert appraisal was valid. He also expressed the opinion that appraisers could not be trusted to submit honest appraisals and indicated that by permitting additional evidence the case would become protracted and that it would never end.

During the hearing, the appellant argued that the Cole, Layer, Trumble appraisals were unrealistic, in that they valued the parties' farm land at $77.00 per acre and that it was some of the best land in Randolph County. The appellant also argued that, due to the fact that the 115 acre tract, which was by far the largest of the four tracts constituting the couple's farm, was to be divided unequally, the incorrect appraisal took on much greater significance than if the tract were to be divided equally. The appellant offered to pay $90,000.00 for her husband's half interest the parties' real estate, even though $90,000.00 was $15,000.00 more than the total value placed on the real estate by Mr. Spessert. The court, in response to the appellant's last offer, suggested that the appellant submit a buy-sell offer in writing to the appellee's counsel.

After the June 30, 1986, hearing was concluded, the appellant did submit a buy-sell offer to her husband, proposing to purchase or to sell to him a one-half interest in the property for $90,000.00.

On December 23, 1986, the trial court conducted another hearing in the case. At that time, the court advised the parties that he had reviewed the Spessert appraisal, that he had considered the Cole, Layer, Trumble tax reappraisal figures, and that he had conducted his own view of the property. He stated that he believed the Spessert appraisal of $75,000.00 was correct and that the Basilone appraisal offered by the appellant was inflated and slanted and had no bearing on the value of the property. The court characterized the buy-sell offer presented by the appellant as ridiculous and made for either spite or revenge. The court then approved the commissioner's report in its entirety, overruled the objections and motions made by the parties, disregarded the Basilone appraisal, and rejected the buy-sell offer made by the appellant.

On appeal, the appellant argues that the value placed on the real estate by the commissioner and by the trial court was unrealistically low and that the court erred in refusing to allow her to adduce evidence relating to the value of the real estate and in refusing to permit her to cross-examine Carl Spessert. She also claims that the court erred in considering the Cole, Layer, Trumble tax reappraisal figure and in refusing to permit her to vouch the record with evidence of the value of the property.

■ The only actual evidence in the record of the case relating to the value of the parties' farm consists of the appraisal prepared by Carl Spessert, which indicated that the real estate was worth $75,000.00 and that the farm personal property was worth $25,292.00, and of the Cole, Layer, Trumble reappraisal, which indicated that the farm real estate had a value of $66,300.00. In view of the evidence, this Court cannot say that the appellant has established that the value placed on the property by the commissioner and thus by the court, was clearly erroneous or unrealistically low. However, the Court does believe that the trial court should have allowed the appellant to introduce independent evidence relating to the value of the real estate and should have permitted her to cross-examine Carl Spessert.

■ In challenging the appellant's assertion that she should have been allowed to introduce independent evidence of the value of the real estate, the appellant's husband argues that Mr. Spessert was appointed pursuant to the provisions of Rule 706 of the West Virginia Rules of Evidence, which authorizes the appointment of a court expert where expert evidence is required in a case. He argues that during the actual trial of the case the parties failed to call witnesses to testify as to the

value of the property in question and that the only evidence introduced was the Cole, Layer, Trumble appraisal which he submitted. In his brief in the present appeal, he states "One can only conclude that counsel for appellant believed the appraisal would be binding," and he argues that the appellant did not object to the appointment of Mr. Spessert until she saw the value which Mr. Spessert placed on the property.

Rule 706 of the West Virginia Rules of Evidence authorizes a trial court, either on its own motion or on the motion of any party, to appoint an expert witness where an expert witness is required in a case. Subsection (d) of the rule specifically indicates, however, that "[n]othing in this rule limits the parties in calling expert witnesses of their own selection."

This Court can find nothing in the record of the present case which supports the appellant's husband's allegation that counsel for the appellant believed that the court's expert's opinion would be binding. It is further obvious that the taking of evidence on the extent of the parties' property and on the factors relating to its division was not complete at the conclusion of the hearing conducted by the commissioner and that the value of the farm real estate was still in question at the adjournment of that hearing.

Under the circumstances, this Court believes that the trial court and the commissioner did err in refusing to allow the appellant to introduce independent evidence of the value of the real estate in question.

■ Rule 706 of the West Virginia Rules of Evidence is modelled on Rule 706 of the Federal Rules of Evidence. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 706[02], pp. 706–25–26 (1988), says the following regarding cross-examination where a court-appointed expert testifies pursuant to Rule 706:

> Each party's right to cross-examine is recognized, carrying with it the right to ask leading questions and to develop relevant material beyond the scope of the expert's direct testimony.... This right exists even if a party exercises its right

under Rule 706(a) to call the court appointed expert itself.

Obviously, the appellant could not cross-examine Carl Spessert, the court-appointed witness, until after he had reached some conclusion as to the value of the property in question. The Court, therefore, concludes that the trial court also erred in refusing to allow the appellant to cross-examine Mr. Spessert.

■ The Cole, Layer, Trumble tax reappraisal was prepared by a professional appraisal firm, and the Court believes that, although not conclusive, it was appropriate evidence for the commissioner and the court to consider.

■ The appellant next claims that the commissioner and court erred in awarding her husband the right to purchase her interest in the farm and thus to retain the farm.

The court's apparent reason for allowing Clay S. Tallman to retain the farm was that the farm, in the court's view, was his business.

*West Virginia Code*, 48–2–32, authorizes a trial court to take steps to encourage the retention of ownership interests in property which constitutes a business entity and to award such interests to the party having the closer involvement or larger ownership interest or greater dependency upon the business entity for income. The specific statutory language relating to this contained in *W. Va. Code*, 48–2–32(e), provides, in relevant part:

> In any case involving the equitable distribution of ... (2) ownership interests in a business entity, the court shall, unless the parties otherwise agree, give preference to the retention of ownership interests in such property. In the case of such business interests, the court shall give preference to the party having the closer involvement, larger ownership interest or greater dependency upon the business entity for income or other resources required to meet responsibilities imposed under this article....

*West Virginia Code*, 48–2–32(e), also provides that the court may sever the business

relationship of the parties and order the transfer of legal interests to ownership interests in the business entity from one party to the other if such transfer is required to achieve the purposes of the article. The court, however, is required to provide for an equitable payment or transfer in exchange for the fair value of the business property ordered transferred.

The appellant argues that the farm which the parties owned existed solely for the purpose of affording her husband an opportunity to live in a setting that was pleasant and desirable to him and that it was not necessary for him to earn a living. She also argues that it is obvious that he does not and cannot derive an income from the farm and, therefore, the farm should not be considered his source of livelihood or as a business.

A close examination of the record shows that the appellant's husband actually used the farm as his sole place of employment after 1951 or 1952, although income tax returns indicate that from an income tax point of view the farm did not produce a profit. An examination of those returns shows that it did actually generate income, but that income was offset by depreciation and various other income tax shelter devices. The record also indicates that the parties maintained a substantial herd of cattle on the property and maintained and operated a large amount of farm equipment in conjunction with the farm's operation. Additionally, the farm was the appellant's husband's sole place of business while the appellant worked at Davis and Elkins College.

In this Court's view, there was sufficient evidence for the trial court to conclude that the farm was a business even though it consistently lost money for income tax purposes and that the appellant's husband had the closer association with it.

■ Next, the appellant claims that the trial court erred in awarding her husband one-half of the value of her pension accumulation with the Teachers Insurance & Annuity Association.

In arguing this point, the appellant states in her brief:

The Court adopted the Commissioner's finding that the Appellee is entitled to an allocation of one-half (½) of the $63,656.54 present value of the Appellant's pension fund. The Court and the Commissioner similarly erred in ignoring the Appellee's retirement annuity which will pay him almost $2,000.00 per year after age 65, the Commissioner in his proposed allocation making absolutely no reference to the Appellee's annuity.

It is true that the commissioner found that the appellant's husband was entitled to one-half of the appellant's pension accumulation with the Teachers Insurance and Annuity Association, but a careful examination of the commissioner's report also indicates that in his proposed allocation of the parties' resources the commissioner stated: "Defendant's Annuity—Defendant either pay Plaintiff one-half (½) of present value or one-half (½) of benefits as received." It, thus, appears that what the commissioner actually did was award the appellant, contrary to her allegations in her brief, a one-half interest in her husband's annuity in exchange for awarding her husband a one-half interest in her pension plan.

There is evidence that the appellant obtained her pension rights only after she was married and acquired them with monies earned during marriage.

In syllabus point 4 of *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987), this Court recognized that pension arrangements were subject to equitable distribution and that:

Although *W.Va.Code*, 48–2–1 [1984] and *W.Va. Code*, 48–2–32 [1984] did not specifically mention pension plans as marital property available for equitable distribution, these two *Code* sections were broad enough to encompass pension plans.

*See also Raley v. Raley*, 181 W.Va. 254, 382 S.E.2d 91 (1989).

■ The appellant next claims that evidence adduced shows that her husband wrongfully converted certain securities which belonged to the couple and that the commissioner and court erred in allocating

her only $18,500.00 of the value of these securities. She argues, in essence, that over the years the securities generated substantial income and that she should have been allocated a share of the potential income as well as of the actual securities.

The evidence relating to the securities shows that in 1971 the parties had a large number of securities in a joint safety deposit box. During a period of tension between the parties, the appellant's husband removed approximately $40,000.00 worth of securities, which were titled in his name alone, from the safety deposit box. He left a large number of other securities, which bore the appellant's name, in the box. There was evidence that these securities had been purchased with marital funds or marital funds and the appellant's husband's inheritance.

The appellant's husband admitted that he had taken the securities but further testified that he had cashed one $500.00 bond and that he had spent the interest to pay living expenses. The record indicates that he listed the remaining securities on his disclosure of assets and liabilities at the time of the divorce.

The commissioner ruled that the securities which the appellant's husband removed were marital property and found that they had a net value of $37,000.00 at the time of the divorce. The commissioner recommended that they be divided equally between the parties and for that reason allocated the appellant $18,500.00 of the value of the securities.

The purpose of the marital distribution statute is to divide marital property as it exists at the time of the divorce. It appears to this Court that, in claiming that she is entitled to more than $18,500.00 of the value of the securities in question, the appellant is claiming entitlement to some hypothetical increase in value or hypothetical property which the record fails to shows that either of the parties possessed at the time of the divorce.

Because there is no evidence showing that the appellant's husband had more than $37,000 at the time of the divorce as result of the conversion, the trial court did not err in adopting the commissioner's recommendation that the appellant be awarded only $18,500.00 of the value of the securities in question.

The appellant lastly claims that the trial court and commissioner erred in failing to designate certain savings bonds registered in her name and the name of her father or mother worth $5,000.00 as her separate property. On appeal, she claims that her father provided the funds for the bonds and that the court should have designated them as her separate property.

During the hearings in this case, the appellant testified that her father had purchased an insurance policy when she was very young and that he later gave it to her and her sister. She further testified that from her share of the proceeds of the proceeds of the insurance policy she had purchased the bonds. Her husband essentially did not counter this testimony and he states on appeal that he has no way of countering the appellant's allegation on this point.

In *W.Va.Code*, 48–2–1(f), the Legislature has indicated that separate property is:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; and

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in

market value resulting from conditions outside the control of the parties.

This Court believes that the testimony in the case shows that the savings bonds in question were either "[p]roperty acquired by a person before marriage" or "[p]roperty acquired by a party during marriage by gift, bequest, devise, descent or distribution" and that, in view of the evidence the trial court erred in not declaring the bonds to be the appellant's separate property.

For the reasons stated, the judgment of the Circuit Court of Randolph County relating to the 115–acre tract of land and the $5,000.00 in bonds which the appellant claims as her separate property is reversed and the remainder of the court's property division order is affirmed. On remand, the circuit court is directed to afford the appellant an opportunity to present independent evidence on the value of the parties' farm and the court is further directed to afford the appellant an opportunity to cross-examine Carl Spessert, the court's expert appraiser. After the development of further evidence on the value of the farm, the court is to reconsider, in light of all the factors set forth in *Whiting v. Whiting*, *supra*, whether the farm should be divided on an unequal basis. The court is also directed to declare the $5,000.00 in bonds claimed by the appellant as her separate property.

Reversed in part; affirmed in part; remanded with directions.

NEELY, Chief Justice, dissenting:

Because this opinion is another fruit of the "poisonous tree" of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), I dissent. This opinion continues the redistribution of property begun with *Whiting*'s eschewing the equitable distributive statute in favor of marital property. *See Whiting, Id.* (Neely, C.J., dissenting, for my criticism of the majority's rationale and statutory interpretation).

In this case the majority, noting the uneven distribution of a 115–acre farm (two-thirds to the husband and one-third to the

wife), remands this case because the circuit court did not consider all the factors specified in *W.Va.Code,* 48–2–32 [1984]. The majority specifically notes that the commissioner and the circuit court did not consider the presumption in favor of marital property, the effect of the marriage on the parties' income-earning ability and the conduct of the parties that affected the value of the marital property.[1] (See 183 W.Va. page 495, 396 S.E.2d page 457)

Although the *Whiting* procedure was not followed, the record in this case justifies the uneven distribution of the 115–acre farm and shows that the commissioner and the circuit court did consider all statutory factors. Regarding the 115–acre farm, the commissioner found:

In November 1950, the parties purchased a 115 acre farm in New Interest District, Randolph County, West Virginia, for approximately $25,000.00. The purchase included not only the real estate at a price of about $16,000.00, but also the livestock and other personal property located on the farm. The purchase was financed by use of borrowed funds of $5,000.00 and funds of the Defendant which had accumulated from oil and gas royalties and rentals from real estate inherited by the Defendant. Approximately $20,000.00 of Defendant's separate funds were used for the purchase; the balance being financed through a $5,000.00 loan from Defendant's relatives which apparently was repaid from joint funds of the parties.

Shortly after the purchase of the farm property and continuing until 1963 both parties worked essentially full time in and about the management and operation of the farm property and the Plaintiff performed homemaking services.

The commissioner noted that both parties gave full time care to the farm for about twelve years and that Mr. Tallman continues to devote full time to the farm. The commissioner also noted that Ms. Tallman had been employed by Davis & Elkins College to teach physical education from 1963

1. By order dated 9 April 1987, the circuit court, over the exception of the parties, affirmed and

adopted the commissioner's report in its entirety.

until the time of the divorce. The majority failed to acknowledge that these findings address the effect of the marriage on the parties' income-earning ability and the conduct of the parties that affected the value of the marital property.

Although the commissioner did not specifically identify the 115–acre farm as "marital property" based on the *Whiting* presumption, the 115–acre farm was treated as marital property. Because of the unequal initial monetary contribution of the parties, the commissioner recommended the following allocation:

Two-thirds (⅔) of the value of the farm real estate purchased in 1950 to the Defendant. One-third (⅓) of the value of the farm real estate purchased in 1950 to the Plaintiff. One-half of the farm real estate purchased subsequent to 1950 to each the Defendant and the Plaintiff. One-half (½) of the value of the livestock and farm equipment to each of the parties.

In remanding this case, the majority is continuing to misuse the equitable distribution statute to redistribute separate property that the legislature has intended to remain separate. Although the farm became marital property (*See Koontz v. Koontz*, 183 W.Va. 477, 396 S.E.2d 439 (1990) (Neely, C.J., dissenting, for a discussion of the factors that should be considered to determine if property has become a joint enterprise and should be considered as marital property), Mr. Tallman's initial contribution of approximately $20,000 of his separate funds to purchase the 115–acre farm justifies the unequal division of the property.[2] The other factors specified in *W.Va.Code*, 48–2–32 [1984], were considered and addressed by the commissioner who, according to the majority, "took extensive evidence on the parties' property, on the parties' various inheritances, and on the parties' respective contributions to the marriage." 183 W.Va. page 494, 396 S.E.2d page 456.

Because the record indicates that fact finders considered the statutory factors in reaching a just and equitable distribution of the 115–acre farm, the majority's focus on the circuit court's failure to follow the *Whiting* form suggests that unequal distributions of marital property based on contributions of separate property are disfavored and will be subject to intensive procedural review. Today's decision continues to fertilize the *Whiting* marital property tree that subsumes all separate property after a marriage.

---

**2.** *See Tallman, supra* n. 1 noting that Mrs. Tallman contributed $100.00 and $111.25 in 1952 and 1956, respectively, to the marriage.