454 S.E.2d 400

**Johanna Puskar PRATT, Plaintiff Below, Appellee**

v.

**H. Raymond PRATT, III, Defendant Below, Appellant.**

**No. 22237.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 1994.

Decided Dec. 16, 1994.

---

Robert W. Dinsmore and Kimberly S. Croyle, Bowles, Rice, McDavid, Graff & Love, Morgantown, for appellant.

**108**

Andrew G. Fusco and Debra A. Bowers, Fusco & Newbraugh, Morgantown, for appellee.

PER CURIAM:

This is an appeal from the January 11, 1994 order of the Circuit Court of Monongalia County's adoption of the recommended order and decision of the family law master in a divorce proceeding which, *inter alia,* awarded the entire marital home to the appellee, Johanna Puskar Pratt. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this case is remanded to the circuit court.

I

The facts of this case are not in dispute. The parties herein, Johanna Puskar Pratt and H. Raymond Pratt, III, were married in Monongalia County, West Virginia on August 26, 1989.[1] The parties separated on May 7, 1993, and the following July, Mrs. Pratt filed for divorce on the grounds of irreconcilable differences. The record reveals that the parties accumulated sizeable assets during their marriage,[2] including the marital home, which is the subject of this appeal.

Prior to the parties' marriage, Mrs. Pratt's father loaned her money to purchase a condominium, retaining a deed of trust for the repayment of the loan. Upon the marriage of the parties, Mrs. Pratt's father provided a down payment to the parties to purchase a home in the Cedarwood Subdivision of Monongalia County. This property was titled in the joint names of the parties. The parties eventually sold both the Cedarwood home and the condominium purchased by Mrs. Pratt prior to the marriage. The sale proceeds from the Cedarwood home were used to pay off certain matters and to invest in stocks and securities, while the proceeds from the sale of the condominium were used to repay Mrs. Pratt's father for the money used to purchase the Cedarwood home.

Subsequently, Mrs. Pratt's father provided the parties with a check in the amount of $299,000[3] with which they purchased their marital home on March 5, 1991. The check from Mrs. Pratt's father was written payable to both parties, deposited in their joint account and the home was, subsequently, titled in their joint names. The appraised value of the home is $350,000, against which there is a $22,000 lien attached for a home equity loan used to purchase furniture for the home.

In his findings of fact and conclusions of law, the family law master determined the subject real estate to be "unquestionably a marital asset," but reasoned that since it was "basically derived from gifts provided to the parties, by the parents of [Mrs. Pratt] ... to divide the value of the home equally between the parties would be to provide [Mr. Pratt] an enormous windfall." The family law master further concluded that "[i]t was through the father of [Mrs. Pratt] ... that the marital home was obtained. The Master uses his discretion under [*W.Va.Code* ] 48–2–32 to distribute the property other than equally and does so by awarding the entire value of the home to [Mrs. Pratt] ... and equally dividing all of the other set forth marital property."

On appeal to the Circuit Court of Monongalia County,[4] the family law master's recommended order was summarily affirmed as equitable and neither an abuse of discretion, arbitrary nor capricious. It is from the circuit court's order that Mr. Pratt now appeals.

II

Mr. Pratt's only assignment of error is that the marital home, which the family law master determined to be "unquestionably" a marital asset, should have been divided equally among the parties, pursuant to *W.Va. Code,* 48–2–32(a) [1984]. While *W.Va.Code,*

---

**1.** One child, Kyle, was born of the marriage, on September 8, 1990.

**2.** Indeed, the family law master commented that, "[d]uring the marriage, the parties experienced a very high standard of living and lifestyle, fueled by gifts from the parents of [Mrs. Pratt][.]"

**3.** Neither party asserts that this money was a loan to be repaid to Mrs. Pratt's father.

**4.** *See W.Va.Code,* 48A–4–16 [1993] and 48A–4–20 [1993].

48-2-32(c) [1984] provides for a distribution of marital property *other than equally,* certain statutory criteria must first be considered. We agree with Mr. Pratt's contention that neither the family law master nor the circuit court properly considered these statutory criteria.

■ In syllabus point 1 of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court articulated our general procedure for determining equitable distribution in divorce cases:

> Equitable distribution under W.Va.Code, 48-2-1, *et seq.,* is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48-3-32.

*See also* syl. pt. 2, *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991); syl. pt. 1, *Signorelli v. Signorelli,* 189 W.Va. 710, 434 S.E.2d 382 (1993). The first step in the equitable distribution process, determining whether a particular unit of property is marital or separate property,[5] is a question of law. *Whiting,* 183 W.Va. at 454-55, 396 S.E.2d at 416-17 (citations omitted). As indicated above, the family law master found that the subject real estate was part of the marital estate. The second step, valuation of the marital property, was also completed by the family law master.[6] The marital property was valued at $350,000.

■ The third and final step in this process is the division of the marital property between the parties. While under *W.Va. Code,* 48-2-32(a) [1984],[7] there is a presump-

tion of equal division of the marital property, *W.Va.Code,* 48-2-32(c) [1984] authorizes an alteration of the distribution "only if the circuit court determines that equal division of the marital property is inequitable in view of certain economic and noneconomic contributions to or devaluations of the marital estate by either spouse." *Whiting,* 183 W.Va. at 455, 396 S.E.2d at 417. The provisions of *W.Va.Code,* 48-2-32(c) were summarized in syllabus point 1 of *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988):

> In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code § 48-2-32(c) (1986).

Additionally, *W.Va.Code,* 48-2-32(d)(2) [1984][8] outlines further adjustments to be

---

5. "Marital property" is defined in *W.Va.Code,* 48-2-1(e) [1992] and "separate property," in *W.Va.Code,* 48-2-1(f) [1992].

6. Under *W.Va.Code,* 48-2-32(d)(1) [1985], the measure of value is the net value of the martial property, ordinarily as of the date of the commencement of the action. The parties herein do not dispute the family law master's valuation of the home.

7. *W.Va.Code,* 48-2-32(a) [1985] provides that "[e]xcept as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital

property of the parties equally between the parties."

8. *W.Va.Code,* 48-2-32(d)(2) [1984] states:

(d) After considering the factors set forth in *subsection (c) of this section, the court shall:*

. . . .

(2) Designate the property which constitutes marital property, and define the interest therein to which each party is entitled and the value of their respective interest therein. In the case of an action wherein there is no agreement between the parties and the relief demanded requires the court to consider such factors as

considered where an unequal distribution of marital property is anticipated. *Whiting,* 183 W.Va. at 455, 396 S.E.2d at 417.

■ Though the family law master alluded generally to *W.Va.Code,* 48-2-32 as a source of authority to divide the marital residence other than equally, neither he nor the circuit court[9] specifically referred to the statutory criteria set forth in *W.Va.Code,* 48-2-32(c) [1984] as a basis for awarding the entire marital residence to Mrs. Pratt.

■ As we held in syllabus point 3 of *Somerville, supra:* "An order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in § 48-2-32(c), and the facts in the record that support application of those factors." We further stated in *Somerville* that "[s]uch a discretionary determination must result from a rational application of the statute to facts on the record, and this reasoning must be reflected in the order and must support the property division directed." *Id.* 179 W.Va. at 389, 369 S.E.2d at 462.

As we indicated above, no specific reference to the statutory factors found in *W.Va. Code,* 48-2-32(c) [1984] was made by either the family law master or the circuit court in their decisions and the record does not suggest that these factors were otherwise contemplated in the decision to divide the marital residence other than equally. Consequently, this case is remanded to the circuit court with directions to make further findings of fact and conclusions of law in accordance with *W.Va.Code,* 48-2-32(c) [1984] and syllabus points 1 and 3 of *Somerville, supra.*

Remanded with directions.

are described in subdivisions one, two, three and four, subsection (c) of this section, if a consideration of factors only under said subdivisions one and two would result in an unequal division of marital property, and if an examination of the factors described in said subdivisions three and four produce a finding that a party (A) expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, or (B) conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties, then the court may, in the absence of a fair and just alimony award under the provisions of section fifteen [§ 48-2-15] of this article which adequately

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

NEELY, J., dissents and files a dissenting opinion.

CLECKLEY, J., concurs and files a concurring opinion.

NEELY, Justice, dissenting:

Alert! Sound the alarm for generous parents! *Whiting v. Whiting* strikes again!

In this case the marital home was purchased by Mrs. Pratt's father. His $299,000 check was payable to both parties, deposited in a joint account and used to purchase the jointly titled house. Indeed Mrs. Pratt's family gave the parties substantial gifts throughout their brief marriage that paid for the parties' high standard of living. However, the majority chooses to ignore the record and questions why the family law master and the circuit court awarded the entire value of the home to Mrs. Pratt and remands the case.

Why does the majority reach this absurd result? *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990) (Neely, J. dissenting). *See Koontz v. Koontz,* 183 W.Va. 477, 396 S.E.2d 439 (1990) (Neely, J., dissenting); *Tallman v. Tallman,* 183 W.Va. 491, 396 S.E.2d 453 (1990) (Neely, J., dissenting); *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991) (Neely, J., dissenting). *See also Charlton v. Charlton,* 186 W.Va. 670, 413 S.E.2d 911 (1991) (Neely, J., concurring in part and dissenting in part) (ways *a spouse*

takes into account the facts which underlie the factors described in said subdivisions three and four, equitably adjust the definition of the parties' interest in marital property, increasing the interest in marital property of a party adversely affected by the factors considered under said subdivisions three and four who would otherwise be awarded less than one half of the marital property, to an interest not to exceed one half of the marital property.

9. *See W.Va.Code,* 48-2-32(f) [1984] which requires a circuit judge to set out, in detail, the reasons for making any division of property. *See Somerville,* 179 W.Va. at 389, 369 S.E.2d at 462.

can rebut the presumption of a gift to the marital estate).

The Pratts' marriage lasted less than four years, four good years because of the generosity of Mrs. Pratt's family. Now because of *Whiting*, Mrs. Pratt's family's generosity might, *horrible contemplatu*, continue to benefit their daughter's former husband.

Parents take note: Don't give joint gifts to your children and their spouses unless you really intend for the gifts to be equally divided when your children divorce. Legislature take note: Nobody understands *W.Va.Code* 48–2–1(f) [1992] on separate estate. Maybe you can hire the guys who write the *Batman* comics to draw the majority a picture. Certainly nobody listens to me.

CLECKLEY, Justice, concurring:

I concur in the decision to remand because it is not clear what criteria was used by the circuit court or the family law master in declaring that the marital home was "separate property." By remanding this case to the circuit court, it should not be inferred that we are suggesting that the family law master or the circuit court was wrong. Rather, we need the lower tribunals to better explain their decision so that we can give that decision proper appellate scrutiny. In explaining the decision upon remand, the family law master and circuit court must understand that they are not permitted to rewrite the statute. It is, therefore, incumbent upon them to use statutory standards and, where appropriate, statutory language. Under the facts of this case, terminology such as "an enormous windfall" is simply not helpful for purposes of appellate review.

The purpose of W.Va.Code, 48–2–32(c) (1985), is to promote equitable resolutions of disputed issues regarding marital assets. While I believe that the enumerations listed in this section are illustrative only and not exhaustive, the listing is indicative of legislative intent and the range of factors that may be considered by the family law master in making his determination.[1]

I believe there is a sound and rational basis for holding that the marital home was not a marital asset and could very well constitute separate property. Subsection (c)(1) states that the family law master may consider "[t]he extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, *including, but not limited to*: ... (B) [f]unds which are separate property." (Emphasis added). If it is equitable to give back to one spouse the benefits of his or her separate property contributions, it seems just as equitable to give back to the spouse the contribution made solely by his or her parent. If this is what is meant by "an enormous windfall," I believe such a finding is neither clearly erroneous nor an abuse of discretion. The point made by the majority opinion is well taken that "neither he [the family law master] nor the circuit court specifically referred to the statutory criteria set forth in *W.Va. Code*, 48–2–32(c) [1985] as a basis for awarding the entire marital residence to Mrs. Pratt."

For the reasons set forth above, I concur with the majority's opinion.

---

1. The statute reads that "after a consideration of the following" the family law master may decide how to distribute the property. There is no doubt that the starting point is the statute itself.