475 S.E.2d 102

**Johanna Puskar PRATT, Plaintiff Below, Appellee,**

v.

**H. Raymond PRATT III, Defendant Below, Appellant.**

No. 23172.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided July 12, 1996.

---

Andrew G. Fusco, Thomas H. Newbraugh, Jeffrey A. Ray, Fusco & Newbraugh, Morgantown, for Appellee.

Robert W. Dinsmore, Kimberly S. Croyle, Bowles Rice McDavid Graff & Love, Morgantown, for Appellant.

PER CURIAM:

This is an appeal by H. Raymond Pratt III, (hereinafter "Appellant") from a May 10, 1995, order of the Circuit Court of Monongalia County awarding the entire marital home to his former wife, Johanna Puskar Pratt (hereinafter "Appellee"). This matter was previously before this Court, styled *Pratt v. Pratt,* 193 W.Va. 106, 454 S.E.2d 400 (1994), and we remanded for further development in accordance with West Virginia Code § 48–2–32(c) [1984] and syllabus points one and three of *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988). The Appellant contends that the lower court failed to properly apply those concepts and simply reinstituted the initial conclusions. We agree and reverse the decision of the lower court.

### I.

The parties were married in Monongalia County, West Virginia, on August 26, 1989, and separated on May 7, 1993.[1] In July 1993, the Appellee filed for divorce on the grounds of irreconcilable differences. The parties accumulated sizeable assets during their marriage, including a marital home purchased with funds received from the Appellee's father in the form of a joint check to the parties for $299,000. The check was made payable to both parties, deposited in their joint account, and used to purchase the home titled in both names. The appraised value of the home is $350,000, against which there is a $22,000 lien attached for a home equity loan used to purchase furniture for the home.

In his initial findings of fact and conclusions of law, the family law master determined that the home was "unquestionably a marital asset," but concluded that since it was "basically derived from gifts provided to the parties, by the parents of [Mrs. Pratt] ... to divide the value of the home equally between the parties would be to provide [Mr. Pratt] an enormous windfall." The family law master also explained that "[i]t was through the father of [Mrs. Pratt] ... that the marital home was obtained. The Master uses his discretion under [W.Va.Code] 48–2–32 to distribute the property other than equally and does so by awarding the entire value of the home to [Mrs. Pratt] ... and equally dividing all of the other set forth marital property."

On appeal to the circuit court, the family law master's recommended order was affirmed, and the matter was thereafter appealed to this Court. We remanded to the circuit court, reasoning that "no specific reference to the statutory factors found in *W.Va.Code,* 48–2–32(c) [1984] was made by either the family law master or the circuit court in their decisions and the record does not suggest that these factors were otherwise contemplated in the decision to divide the marital residence other than equally." *Pratt,* 193 W.Va. at 110, 454 S.E.2d at 404. We directed the circuit court to fashion further findings of fact and conclusions of law in accordance with West Virginia Code § 48–2–32(c) [1984] and syllabus points one and three of *Somerville,* 179 W.Va. at 387, 369 S.E.2d at 460. *Id.* Upon remand, the family law master and circuit court again concluded that the entire marital home should be awarded to Mrs. Pratt. The family law master reasoned that he had authority to "alter the distribution of property between the par-

---

1. One child, Kyle, was born of the marriage, on September 8, 1990.

ties so that it is distributed unequally, after consideration of the factors set forth in West Virginia Code 48–2–32(c)." He also found that "[t]he funds used by the parties to purchase the marital home were funds provided solely by the parents of the ... [Appellee]" and that "such monetary contribution is within the grouping of monetary contributions set forth in West Virginia Code 48–2–32(c)(1) ...." The family law master also found that "the specific factors enumerated in the Code language ... are not exhaustive, and that gifts from the parents of one of the parties is such a factor that may be considered by the Court in determining the distribution of property unequally." The circuit court adopted the family law master's findings and ordered that the marital home would be the sole property of Mrs. Pratt. The Appellant again appealed to this Court.

## II.

■ In reviewing family law master findings which are adopted by a circuit court, we are guided by the standard of review articulated in syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

194 W.Va. at 264, 460 S.E.2d at 265, syl. pt. 1.

■ The Appellant's only assignment of error is that the marital home should have been divided equally between the parties, pursuant to West Virginia Code § 48–2–32(a).[2] In syllabus point one of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), we articulated our general procedure

for determining equitable distribution in divorce cases:

Equitable distribution under W.Va.Code, 48–2–1, et seq., is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va. Code, 48–2–32.

183 W.Va. at 452–53, 396 S.E.2d at 414–15, syl. pt. 1; *see also* syl. pt. 2, *Wood v. Wood*, 184 W.Va. 744, 403 S.E.2d 761 (1991); syl. pt. 1, *Signorelli v. Signorelli*, 189 W.Va. 710, 434 S.E.2d 382 (1993).

■ The first step in the equitable distribution process, determining whether a particular unit of property is marital or separate property, is a question of law. *Whiting*, 183 W.Va. at 454–55, 396 S.E.2d at 416–17 (citations omitted). The family law master found that the subject real estate was part of the marital estate. The second step, valuation of the marital property at $350,000, was also completed by the family law master, and the valuation is not contested by the parties.

■ The final step requires division of the marital property and is governed by West Virginia Code § 48–2–32. While there is a presumption of equal division of the marital property, section 48–2–32(c) authorizes an alteration of the distribution "only if the circuit court determines that equal division of the marital property is inequitable in view of certain economic and noneconomic contributions to or devaluations of the marital estate by either spouse." *Whiting*, 183 W.Va. at 455, 396 S.E.2d at 417. The provisions of section 48–2–32(c) were summarized in syllabus point one of *Somerville*, as follows:

In the absence of a valid agreement, the trial court in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutori-

---

**2.** West Virginia Code § 48–2–32(a) provides that "[e]xcept as otherwise provided in this section, upon every judgment of annulment, divorce or

separation, the court shall divide the marital property of the parties equally between the parties."

ly enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code Sec.48–2–32(c) (1986).

179 W.Va. at 387, 369 S.E.2d at 460, syl. pt. 1.

The actual language of section 48–2–32(c) follows:

In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, **including, but not limited to:**

(A) Employment income and other earnings; and

(B) Funds which are separate property.

(2) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by nonmonetary contributions, including, but not limited to:

(A) Homemaker services;

(B) Child care services;

(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;

(D) Labor performed in the actual maintenance or improvement of tangible marital property; and

(E) Labor performed in the management or investment of assets which are marital property.

(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:

(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and

(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.

(4) The extent to which each party, during the marriage, may have conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of the economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.

The Legislature's inclusion of the phrase "including, but not limited to" within subsection (c)(1) was relied upon by the family law master and circuit court in justifying departure from the presumption of equality of division in equitable distribution of the marital property in the present case. We have previously recognized that **equitable** division need not always be **equal** division and, in *Burnside*, we found "it necessary to expound upon the circumstances when the distribution of marital property may be altered upon the grounds listed in W.Va.Code, 48–2–32(c) and (d) (1984)." 194 W.Va. at 272, 460 S.E.2d at 273. We noted the "explicit presumption" under section 48–2–32(c) "that all property characterized as marital property is to be

equally divided," but also recognized as follows:

This distribution may be altered in certain situations that are set forth in the statute. Thus, to be equitable, the division need not be equal, but, as a starting point, equality is presumptively equitable and any alteration from this presumption must be carefully documented and made without regard to the fault of either party.

194 W.Va. at 273, 460 S.E.2d at 273–74 (footnotes omitted).

■ We cautioned in syllabus point three of *Somerville* that "[a]n order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in § 48–2–32(c), and the facts in the record that support application of those factors." 179 W.Va. at 387, 369 S.E.2d at 460. We further stated in *Somerville* that "[s]uch a discretionary determination must result from a rational application of the statute to facts on the record, and this reasoning must be reflected in the order and must support the property division directed." 179 W.Va. at 389, 369 S.E.2d at 462.

■ In the present case, the family law master and circuit court, during their initial consideration of this matter, failed to adequately articulate their rationale for departing from the presumption of equal division. Upon remand, the family law master and circuit court justified the decision by reasoning that the statute, in using the phrase "including, but not limited to" recognized that certain unforeseen circumstances could potentially trigger the discretion to distribute marital property less than equally to obtain an equitable distribution. While the phrase "but not limited to" in section 48–2–32(c) certainly implies some discretion in the family law master, we do not find that the circumstances of the present case compel departure from the presumption of equality in distribution. Such discretion in the family law master is not unfettered. The gift in the present case was unquestionably a gift to **both** parties, was deposited into a **joint** bank account, and was utilized for the purchase of a **jointly** titled home.[3] Under these circumstances, we must reverse the decision of the lower court and remand this matter for the entry of an order equally dividing the marital home.

Reversed and Remanded with Directions.

CLECKLEY, J., deeming himself disqualified, did not participate in the decision of the Court.

---

**3.** Had the check from the Appellee's father been written only to the Appellee, she would certainly have a stronger position.