371 S.E.2d 362

T.S.K.

v.

K.B.K.

No. 17982.

Supreme Court of Appeals of West Virginia.

July 20, 1988.

Debra Archer, Bayless, Wills & Archer, Princeton, for K.B.K.

Robert R. Rodecker, McDonald, Rodecker & Rodecker, Charleston, for T.S.K.

PER CURIAM:

This is an appeal by K.B.K. from a custody ruling of the Circuit Court of McDowell County in a divorce proceeding. That ruling awarded the appellant's former husband custody of the parties' two infant children. On appeal the appellant claims that the trial court erred in denying her custody of the children. After reviewing the record, this Court agrees and reverses the decision of the circuit court.

The appellant and her husband, T.S.K., were married on March 17, 1973. Subsequently, on June 4, 1974, and June 16, 1977, two sons were born of the marriage.

On March 6, 1986, the appellant's husband, T.S.K., filed a divorce complaint in the Circuit Court of McDowell County. In the complaint he alleged that irreconcilable differences had arisen between the parties and that the appellant had been guilty of cruel and inhuman treatment toward him.

Among other things, he prayed that he be awarded custody of the parties' two infant sons, who at the time of the filing of the complaint were eight and eleven years of age.

In response to the complaint the appellant filed an answer and counterclaim in which she admitted irreconcilable differences but denied that she had been guilty of mental cruelty. She claimed that her husband had been guilty of mental cruelty and that she had been primary caretaker of the infant children. She took the position that the best interests of the children would be promoted by the court awarding custody to her.

The circuit court referred the case to a divorce commissioner, and the commissioner, after conducting hearings, submitted a report of findings and recommendations dated May 2, 1986. In the report he recommended that a divorce be granted to the parties on the ground of irreconcilable differences. He also concluded that it was apparent that the sons were in the care of the appellant's husband most of the time and that he had been in charge of their religious education and activities. The commissioner concluded that the evidence clearly indicated that the appellant's husband had been the principal caretaker of the children, and he recommended that the care and custody of the children be awarded to the husband with full and ample visitation rights being granted to the appellant.

After submission of the Commissioner's report to the circuit court, the appellant moved that the parties and the children be evaluated by a psychologist. The court, by order entered on May 21, 1986, granted the motion and directed that the parties and their children be examined by a psychologist.

In June, July and August, 1986, Mari Sullivan Walker, a licensed psychologist, examined the parties and their children. On August 13, 1986, she reported that the appellant's husband had provided more physical care for the children than the appellant, but that the appellant had provided psychological support for them. Her overall view was that the role of primary caretaker had been performed by both parents. She indicated that joint custody would be her ideal recommendation. Otherwise, she recommended that the appellant be awarded custody.

After receiving the psychologist's report, the trial court, on December 8, 1986, granted the parties a divorce on the ground of irreconcilable differences and awarded the appellant's husband custody of the children. The court specifically found that the appellant's husband had been the primary caretaker of the children and that he was a fit and proper person to have care, custody and control of the children. It is from this ruling relating to custody that the appellant now appeals.

On appeal the appellant's claims, among other points, that the trial court's finding that her husband was the primary caretaker of the parties' children is clearly wrong and contrary to the preponderance of the evidence.

■ This Court on a number of occasions has indicated that custody of children of tender years should be awarded to the primary caretaker of those children. The rule is set forth in syllabus point 2 of *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981):

> With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit.

In defining a "child of tender years" the Court stated in syllabus point 7 of *Garska v. McCoy:*

> The concept of a "child of tender years" is somewhat elastic; obviously an infant in the suckling stage is of tender years, while an adolescent fourteen years of age or older is not, as he has an absolute right under *W.Va.Code*, 44–10–4 [1923] to nominate his own guardian. Where there is a child under fourteen years of age, but sufficiently mature that he can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such

weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted.

■ In determining who has been the primary caretaker of an infant child it is incumbent upon a trial court to determine which parent has been primarily responsible for performing the caring and nurturing duties of a parent. In *Garska v. McCoy, supra,* it is explained that these nurturing duties include, among other things: (1) preparing and planning of meals; (2) bathing, grooming and dressing; (3) purchasing, cleaning and care of clothes; (4) medical care, including nursing and trips to physicians; (5) arranging for social interaction among peers after school, i.e. transporting to friends' houses or, for example, to girl or boy scout meetings; (6) arranging alternative care, i.e. babysitting, day-care, etc.; (7) putting child to bed at night, attending to child in the middle of the night, waking child in the morning; (8) disciplining, i.e. teaching general manners and toilet training; (9) educating, i.e. religious, cultural, social, etc.; and (10) teaching elementary skills, i.e., reading, writing and arithmetic.

■ The record in the case presently under consideration indicates that the activities of the appellant and appellee in caring for their infant children differed during two periods of the lives of the children. Rather clearly during the last two years of the children's lives the appellant's husband has been the primary caretaker of the children. The evidence shows that in that period the appellant has moved away from the family residence and her children and has established a new home and obtained new employment in a different community. The children have remained with the appellant's husband, who has cared for their day-to-day needs.

During the previous years of the children's lives, however, both parties were involved in parenting activities. After the first child was born the appellant initially stayed at home and cared for the child. Later, she began working an average of four to six hours a day three days a week. When she was not working she took the child to school, took care of his meals, and also took him and picked him up from baby sitter. She arranged babysitting and dressed the child. The appellee husband, on the other hand, worked full time, occasionally prepared meals, occasionally picked the child up from baby sitter, and occasionally dressed the child.

This pattern continued until the appellant graduated from college in 1977 and started a full time job as a nurse. After she began working full time as a nurse, the appellant continued to make babysitting arrangements for the older child and by that time the younger child, and picked the children up from the baby sitter. She cared for them during the day when she was off. The appellant's husband cared for the children while the appellant slept in the morning after working all night.

In 1979 the appellant's working hours shifted so that she began working during the day. In 1979 she shared with the appellee husband the waking of the children, the preparation of breakfast, and the dressing of the children. She also cared for their clothing and cleaned and bought clothing.

In 1981 the appellant became a head nurse and had expanded responsibilities. At this point in time she did laundry when she returned from work, shared the bathing of the children, on occasion prepared meals, and cared for the children when they were sick. The appellee husband and the appellant apparently shared taking the children to a baby sitter, on occasion shared bathing the children, and shared in preparing breakfast and other meals. During this period of time the appellant's husband spent twenty to thirty hours a week in Little League supervisory activities and was also a director of a local health clinic.

In the following years it appears that the parties shared most of the activities involving caring for the children and jointly participated in activities with the children. The appellant's husband appears to have taken greater responsibility than the appel-

lant for the children's religious training, and he spent a great deal of time with Little League activities.

In spite of the fact that the evidence shows that the appellant's husband spent a great deal of time with the children, there is some suggestion that during a part of that time he was not involved in the lives of the children. For instance, at Little League games, the evidence indicates that although he was physically present with the children, he was often involved in supervisory activities and not involved in what the children were actually doing. Mari Sullivan Walker, the court's psychologist, explained the situation as follows:

> Mr. K ... works a part-time job and is involved in numerous activities. For several months of the year, his Little League activities practically constitute a second job. In listening to Mr. K ... and the boys' descriptions of their lifestyle, it appears that the boys are usually in the same physical location as their father, but he is involved with other matters. Each of the three has stated that very little time is spent at home or as a family.

In characterizing the character of the parties' involvement with the children Ms. Walker stated:

> Mr. K ... has had more contact with the children as they go to school in the system in which he teaches and are involved in Little League in the summer. Mrs. K ... has been the parent responsible for appointments with health professionals and with taking off work to care for a sick child. It also appears that she is the parent that affords the "listening ear."

Ms. Walker found that the appellant was more flexible in addressing the children's needs. She also indicated that the younger child, who at the time was nine years old, indicated that he would like to spend the school year with his mother and the summer with his father. The older child refused to express a preference and indicated that he wanted to spend a lot of time with both parents.

This Court believes that given the totality of the evidence, the trial court should have awarded the appellant custody of the children. The evidence shows that overall the appellant has been at least as involved in the physical care of the children as her husband. It also suggests that she has provided emotional support not available from the husband. According to the psychologist at least one of the children has expressed a preference to live with her.

Accordingly, the judgment of the Circuit Court of McDowell County is reversed, and this case is remanded with directions that custody of the infant children be awarded to the appellant and with further directions that the appellee husband be awarded extensive and meaningful visitation rights.

Reversed and remanded with directions.