460 S.E.2d 264

**Carlos James BURNSIDE, Plaintiff
Below, Appellee,**

v.

**Jacquelyn Nagle BURNSIDE, Defendant
Below, Appellant.**

No. 22399.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 11, 1995.

Decided March 24, 1995.

Dissenting Opinion of
Justice Neely March 31, 1995.

A. Dana Kahle, Wheeling, for appellee.

David J. Sims, Yahn & Sims, Wheeling, for appellant.

CLECKLEY, Justice:

In this divorce proceeding, Jacquelyn Nagle Burnside, the defendant below and appellant herein, appeals a portion of the final order of the Circuit Court of Ohio County, which found the contribution she made to pay off the mortgage on the marital home was part of the marital estate and granted Carlos James Burnside, the plaintiff below and appellee herein, one-half interest therein. Mrs. Burnside argues she paid off the approximately $22,000 balance owed on the mortgage with separate funds she received as inheritance and she did not intend to make a gift to the marital estate. She requests we find Mr. Burnside is entitled to only one-half share of the total equity in the home less her contribution. After reviewing the record, we find the family law master and the circuit court failed to make sufficient findings on this issue. Accordingly, we remand this case.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts essentially are undisputed. The parties were married in January, 1971. One child was born during the marriage. In June, 1988, the parties purchased their home in Wheeling for $29,000 and financed the purchase price. Within a year of purchasing the home, Mrs. Burnside inherited approximately $50,000 and placed it in a separate bank account in only her name. The money was not treated as joint property. This arrangement was the source of major disagreements between the parties.

Mr. Burnside worked for the City of Wheeling, and Mrs. Burnside was self-employed cleaning houses. The parties generally had difficulty meeting their monthly mortgage payment, and Mr. Burnside urged Mrs. Burnside to use the funds from her inheritance to help make ends meet. Mrs. Burnside resisted and asserted the money was earning interest in the bank. The parties agree that every month, for over eighteen months, they argued over their financial arrangement.

In May, 1990, Mrs. Burnside paid off the $22,480.14 balance on the mortgage with part of the proceeds from her inheritance. The parties separated approximately three months later, and this divorce proceeding was instituted.

On January 22, 1993, the family law master issued his findings of fact and conclusions of law recommending the marital home be found to be joint property and the value of the home be equally divided between the parties.[1] The family law master stated: "The fact that the financial responsibilities and obligations of the parties created tensions and arguments does not raise to the level of creating coercion and duress such as to force the wife to use her inheritance to pay off the mortgage." The family law master, therefore, found the act of Mrs. Burnside's transferring her funds to pay off the home "created joint property where none previously existed."

On September 9, 1993, the Circuit Court of Ohio County entered a final order specifically addressing the other issues litigated by the parties, such as child custody and alimony, and adopting the equitable distribution as calculated by the family law master. Mrs. Burnside appeals the portion of the order involving the equitable distribution of the marital home.

## II.

### STANDARD OF REVIEW

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard;[2] the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review. *Stephen L.H. v. Sherry L.H.,* —— W.Va. ——, —— S.E.2d —— [1995 WL 87940] (No. 22084 3/6/95). Although factual findings are reviewed under the clearly erroneous standard, mixed questions of law and fact that require the consideration of legal concepts and involve the exercise of judgment about the values underlying legal principles are reviewed *de novo.* This standard has particular force when a family law master interprets the equitable distribution statute and draws conclusions based on the characterization of statutory legal principles.

In the present case, although the family law master found that coercion and duress did not force Mrs. Burnside to use her inheritance to retire the mortgage on the marital home, the family law master did not reach the issue of whether Mrs. Burnside lacked the intent to make a gift and whether equitable distribution should be altered based on factors stated in W.Va.Code, 48–2–32(c) (1984). For these and other reasons ex-

---

1. The home was valued at $29,000. Thus, each party was to receive $14,500.

2. Syllabus Point 1 of *Stephen L.H. v. Sherry L.H.,* —— W.Va. ——, —— S.E.2d —— [1995 WL 87940] (No. 22084 3/6/95), provides: "A circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." The exercise of discretion contemplates reasoned decision making on the basis of relevant and appropriate considerations to the

task at hand. *See generally Langnes v. Green,* 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931). In reviewing for an abuse of discretion, we must consider whether a family law master failed to consider a relevant factor, whether he or she relied on an improper factor, and whether the basis given reasonably supports the conclusion. *See* Maurice Rosenberg, *Judicial Discretion of the Trial Court: Viewed from Above,* 22 Syracuse L.Rev. 635 (1971). Similarly, a family law master commits an abuse of discretion if the correct legal standard is misapplied or if the underlying substantive law is misapprehended. If the exercise of discretion was in error, this Court will

pressed in the text of this opinion, we find it necessary to remand this case for further consideration of this issue.

## III.

## DISCUSSION

This case presents us with the opportunity to review our decisions dealing with the marital gift presumption, the equitable distribution statute, and the procedural steps that a family law master and a circuit court must follow in making a final equitable distribution judgment.

### A.

### Presumption of Gift to Marital Estate

The initial step in any equitable distribution action is the initial classification by a family law master of all property owned by the parties as marital or separate. As a general rule, W.Va.Code, 48–2–1(e)(1) (1992), provides that property acquired by either spouse after the marriage but prior to separation of the parties or dissolution of the marriage is presumed marital property regardless of how title is actually held. W.Va. Code, 48–2–1(f), which is relevant to this case, excepts certain property from this general rule, including property acquired by gift, bequest, devise, and descent or distribution.

■ What is designated as nonmarital property, however, still may be presumptively determined to be marital property by the affirmative action of a spouse. This principle of transmutation is based upon the presumption that the owner of the nonmarital property intends to make a gift of that property to the marital estate.[3] This presumption may be rebutted by competent evidence offered by the transferring spouse showing lack of intent to make a gift or by circumstances showing fraud, coercion, or duress. When the presumption of gift persuasively is rebutted, a family law master may treat the property as nonmarital and separate. *See generally* W.Va.Code, 48–2–1, *et seq.*, and 48–3–10 (1984). With this summary in mind, we now review the specific cases and statutes supporting these conclusions.

In the seminal case of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), we described equitable distribution as a three-step process. We set forth this procedure in Syllabus Point 1 of *Whiting:*

> "Equitable distribution under W.Va. Code, 48–2–1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va.Code, 48–2–32 [1984]."

The issue presented in *Whiting*, however, primarily focused upon the first of these steps, *i.e.*, whether the act of titling separately owned property in the joint names of a husband and wife converts the property into marital property.

■ In Syllabus Point 4 of *Whiting*, we resolved any doubt as to the efficacy of transmutation in West Virginia:

> "Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute."

We further emphasized that taking joint title to separate property creates a "rebuttable presumption of gift to the marital estate" and this "presumption may be overcome by a

---

hold the family law master abused his or her discretion.

**3.** Transmutation is the conversion of separate property into marital property during the marriage by express or implied acts. Courts have held that transmutation can occur by title, by express or implied agreement, by commingling of funds, or by interspousal gift. *See* J. Thomas Oldham, *Divorce, Separation and the Distribution of Property* § 11.01 (1994); John DeWitt Grego-

ry, *The Law of Equitable Distribution* § 2.08[2][c] (1989). "Most courts accept that separate property can be transmuted into marital property if the owning spouse designates joint title, or if the owning spouse commingles separate and marital property and the funds cannot be uncommingled. There is less agreement regarding the effect of an interspousal gift, where the item given was purchased with marital property." *Gussin v. Gussin*, 73 Haw. 470, 487 n. 8, 836 P.2d 484, 493 n. 8 (1992).

showing that the transferring spouse did not intend to transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception." 183 W.Va. at 459, 396 S.E.2d at 421. (Citations and footnote omitted).

In making this conclusion, we discussed the definitions of marital and separate property as contained in W.Va.Code, 48–2–1 (1986), and the abolishment of the presumption of gift in equitable distribution cases contained in W.Va.Code, 48–3–10 (1984). First, we recognized that W.Va.Code, 48–2–1(e)(1), defines marital property very broadly as *"[a]ll property* and earnings acquired by either spouse during a marriage ... except that marital property shall not include separate property as defined in subsection (f) of this section[.]"[4] (Emphasis added). Contrary, separate property is defined specifically in subsection (f) as:

"(1) Property acquired by a person before marriage; or

"(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

"(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

"(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

"(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; and

"(6) Any increase in the value of separate property as defined in subdivisions (1), (2), (3), (4) or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of the parties."[5]

In light of the definitions of marital and separate property, we concluded the Legislature "express[ed] a marked preference for characterizing the property of the parties as marital property." 183 W.Va. at 459, 396 S.E.2d at 421.

Second, we found this position to be consistent with the abolishment of the presumption contained in W.Va.Code, 48–3–10. In W.Va. Code, 48–3–10, the Legislature explicitly stated that in an equitable distribution action "wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved."[6] Although ques-

---

4. In its entirety, W.Va.Code, 48–2–1(e)(1), states:

"All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section[.]"

5. W.Va.Code, 48–2–1, was amended in 1990 and 1992. The 1992 version of W.Va.Code, 48–2–1(e)(1) and (f), is identical to the 1986 version relied upon in *Whiting* except the word "or" was substituted for the word "and" following the semicolon in subsection (f)(5).

6. W.Va.Code, 48–3–10, provides in full:

"Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken: Provided, That *in the case of an action under the provisions of* article two [§ 48–2–1 et seq.] of this chapter wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved."

The most difficult aspect of the *Whiting* presumption is the potential conflict it creates with legislative policy. It is important to underscore that presumptions and the allocation of burdens of proof are as much substantive as procedural and evidentiary law. *See generally, Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436, 441 n. 5 (1994) ("Unquestionably, the legislature may establish and even change judicially adopted burdens of proof."). When the Legislature abol-

tionable,[7] in *Whiting,* we implicitly interpreted W.Va.Code, 48–3–10, as covering situations where one spouse purchases and pays for property but places title *only* in the name of the other spouse. The destruction of the presumption in this situation prevents marital property from becoming separate property without affirmative proof of a gift. *See Roig v. Roig,* 178 W.Va. 781, 785, 364 S.E.2d 794, 798 (1987) ("in order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift"). In addition, we found it "prevent[s] the automatic creation of separate property interests during marriage merely by reference to the manner in which the property was titled." *Whiting,* 183 W.Va. at 459, 396 S.E.2d at 421.

In sum, we concluded in *Whiting* that the combination of the way in which the Legislature defined marital and separate property, the abolishment of the presumption in W.Va. Code, 48–3–10, and our recognition of the concept of marriage as "a partnership or shared enterprise"[8] was sufficient to create a presumption of a gift to the marital estate when separate property is transferred to the names of both spouses. 183 W.Va. at 457, 396 S.E.2d at 419. Furthermore, the presumption of marital property could be "overcome by a showing that the transferring spouse *did not intend to transfer the property to joint ownership* or was induced to do so by fraud, coercion, duress, or deception." 183 W.Va. at 459, 396 S.E.2d at 421. (Emphasis added and footnote omitted).

The very nature of the marital relationship and the nature of jointly owned property by spouses[9] convince us that the

ished the statutory gift presumption in 1984, such a legislative declaration would ordinarily foreclose any further consideration of it by this Court. For reasons discussed in footnote 7, *infra,* in *Whiting* we implicitly distinguished the factual scenario triggering the *Whiting* presumption from the one abolished in W.Va.Code, 48–3–10.

7. The assumption made in *Whiting* that W.Va. Code, 48–3–10, is limited to conveyances where the title is placed only in the name of the other spouse is inconsistent with well established precedent. Cases decided before *Whiting* applied the statutory gift presumption of W.Va.Code, 48–3–10, to situations where one spouse placed title jointly in both spouses' names. *See Smith v. Smith,* 180 W.Va. 203, 376 S.E.2d 97 (1988); *Myers v. Myers,* 176 W.Va. 326, 342 S.E.2d 294 (1986); *Dodd v. Hinton,* 173 W.Va. 69, 312 S.E.2d 293 (1984); *Edwards v. Edwards,.* 117 W.Va. 505, 185 S.E. 904 (1936). We do not, however, find this historical oversight to be significant because the construction given implicitly to W.Va.Code, 48–3–10, in *Whiting* appears more reasonable considering the narrow language of the statute. To clear any doubt, we now make explicit what was implicit in *Whiting,* that cases suggesting a contrary statutory construction were *sub silento* overruled by that decision. Our confidence in the reasonableness of the *Whiting* construction is bolstered by the fact that in two legislative sessions subsequent to *Whiting,* the West Virginia Legislature has not expressed dissatisfaction with *Whiting.* Indeed, if we were to decide this statutory construction issue *de rosa,* we would agree with *Whiting.*

8. In *Whiting,* 183 W.Va. at 457, 396 S.E.2d at 419, we found:

"There is general agreement that the transfer of separately owned property into joint ownership changes the character of the ownership interest in the property so transferred from nonmarital to marital so that the property is subject to equitable distribution. *E.g., Lewis v. Lewis,* 785 P.2d 550 (Alaska 1990); *Husband T.N.S. v. Wife A.M.S.,* 407 A.2d 1045 (Del. 1979); *In re Marriage of Rogers,* 85 Ill.2d 217, 52 Ill.Dec. 633, 422 N.E.2d 635 (1981); *Carter v. Carter,.* 419 A.2d 1018 (Me.1980); *Conrad v. Bowers,.* 533 S.W.2d 614 (Mo.App.1975); *Pascarella v. Pascarella,* 165 N.J.Super. 558, 398 A.2d. 921 (1979); *Parsons v. Parsons,* 101 A.D.2d 1017, 476 N.Y.S.2d 708 (1984); *Quinn v. Quinn,* 512 A.2d 848 (R.I.1986); *Bonnell v. Bonnell,* 117 Wis.2d 241, 344 N.W.2d 123 (1984)."
*Whiting* and the cases cited above represent the majority position in this country. Indeed, one of the leading commentators suggests "[m]ost courts have concluded that a presumption of gift should arise if a spouse purchases property with separate property but takes title with his or her spouse[.]" J. Thomas Oldham, *Divorce, Separation and the Distribution of Property* at 11–4.

9. The property in question was deeded to the Burnsides "as joint tenants with right of survivorship and not as tenants in common." Under W.Va.Code, 36–1–20 (1981), property jointly owned with a right of survivorship creates a form of ownership in which title is held by the marital entity. A property title such as this usually means that two people by virtue of the marriage acquired and held the real estate as one owner.

marital gift presumption is appropriate. This evidentiary presumption is well founded in logic and accords with authority from other jurisdictions. Given the foregoing, we reaffirm our belief in the wisdom of *Whiting,* and we explicitly adopt the marital gift presumption established therein for interpretation and application of W.Va.Code, 48–2–1(e)(1).[10] Therefore, we hold that when a spouse uses separate property to retire the mortgage of property titled jointly, a gift to the marital estate is presumed. This presumption is rebuttable only by clear, cogent, and convincing evidence that a gift was not intended or that the transaction under scrutiny was the result of coercion, duress, or deception.[11]

■ Upon a review of the facts in the present case, we agree that *Whiting* controls. The act of Mrs. Burnside's using proceeds from an inheritance she received to retire a mortgage of jointly titled property presented an evidentiary basis for the presumption that the contribution was a gift to the marital estate subject to division for purposes of equitable distribution. We find, however, the family law master did not make the full range of findings contemplated by the *Whiting* decision. Both the circuit court and the family law master focused on the latter portion of the method of rebuttal and found Mrs. Burnside did not prove she was under "coercion, duress, or deception." Of course, whether Mrs. Burnside rebutted the presumption is a matter left initially to the discretion of the family law master.[12] Applying our deferential standard of review, we do not believe this finding is an abuse of discretion or clearly erroneous. However, the circuit court and the family law master failed to make a specific finding regarding Mrs. Burnside's "intent" to make a gift and, pursuant

---

**10.** A presumption is a standardized practice under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts. *McCormick On Evidence,* § 342, p. 578 (4th Ed. Hornbook Series 1992). Although the reasons for the creation of presumptions are numerous, we believe there are at least three separate justifications for the gift presumption created in *Whiting.* First, and by far the most important, the gift presumption is based upon a preponderance of probability. To save time, the trier of fact is compelled to assume the more likely situation until the adverse party disproves it. Thus, in the present case, if the transferring spouse wants to prove that conveying separate property by joint title to a spouse is not a gift, the transferring spouse has the burden of proof. Second, the *Whiting* presumption has the potential for avoiding a procedural impasse. Often times, the most knowledgeable witnesses are unavailable, if not dead. Without this presumption, courts would not be able reasonably to decide distribution of property based on available, admissible evidence. Third, and perhaps the weakest, is the social policy justification. Of course, this justification usually is implicit rather than expressed. *McCormick On Evidence,* § 343, p. 580, *supra.*

Similarly, the *Whiting* presumption, from a procedural standpoint, is easily applied. The basic facts which give rise to the gift presumption are specific and definite. These facts can be readily determined and uniformly applied. Most significantly, this presumption was created for application in equitable distribution cases, and, as such, the problems of jury instructions are avoided. *See Sanderlin v. Martin,* 373 F.2d 447, 449 (4th Cir.1967) (Haynsworth, C.J. dissenting) ("use of the word 'presumption' in a [jury] charge is so likely to carry with it an implication of artificial evidentiary value that it ought to be avoided"). In the hands of a family law master and a circuit court, the marital gift presumption is useful in fixing and shifting the burden of going forth with the evidence.

**11.** The presumption established in *Whiting* is one of fact and not of law and may be rebutted by circumstances tending to show a contrary intent or that the transferring spouse did not intend for the ostensible receiving spouse to take beneficially. We believe the importance of this presumption and prior precedent requires that the rebuttal evidence must be clear, cogent, and convincing. In the syllabus of *Dodd v. Hinton, supra,* we stated:

> " 'Where a husband purchases real property and causes deeds thereof to be made to himself and wife, jointly, it is presumed that he intended a gift to his wife of a moiety of the property and that she should be vested with full legal and equitable title to such interest, in the absence of *clear* evidence to the contrary.' Syl. pt. 2, *Edwards v. Edwards,* 117 W.Va. 505, 185 S.E. 904 (1936)." (Emphasis added).

Other cases support the heightened standard of proof, a device analogous to requiring objective evidence. *See Wachter v. Wachter,* 178 W.Va. 5, 357 S.E.2d 38 (1987); *Everly v. Schoemer,* 139 W.Va. 392, 80 S.E.2d 334 (1954); *Coffman v. Coffman,* 108 W.Va. 285, 150 S.E. 744 (1929) (superseded by statute as stated in *Whiting* ).

**12.** It must be understood that the function of this Court on appeal is not to apply this rule in the sense of passing on the intensity of the proof. This function is assigned under our standard of review to the trier of fact.

to W.Va.Code, 48A–4–20(d) (1993), we remand this case for further consideration of the intent aspect of the presumption with the following general guidance.[13]

Although *Whiting* explicitly provides that the presumption of gift may be rebutted by a "showing that the transferring spouse did not intend to transfer the property to joint ownership," the facts of *Whiting* did not require any extended analysis as to the type of evidence that is sufficient for this purpose. We believe the facts of this case compel further elaboration. Having already found the gift presumption is rebuttable only by clear, cogent, and convincing evidence that a gift was not intended, we observe both *Whiting* and other courts have offered examples of what is *not* sufficient. The explanation that the joint title was chosen for estate planning purposes is not sufficient to overcome the presumption. *Coffey v. Coffey*, 119 A.D.2d 620, 501 N.Y.S.2d 74 (N.Y.1986); *Brown v. Brown*, 352 Pa.Super. 267, 507 A.2d 1223 (1986). In *Whiting*, we stated that joint titling to "avoid taxes or other adverse consequences of separate ownership" does not deny the transfer, "but only states the reason for making the gift." 183 W.Va. at 459, 396 S.E.2d at 421. In other words, evidence that a gift is made for the purpose of avoiding taxes or other adverse consequences associated with estate

planning does not refute the fact that a gift was made in the first instance.[14]

Our decision in *Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991), recognized a specific situation that would overcome the presumption that jointly titled property is marital property. In that case, Mrs. Charlton inherited money which she entrusted to her husband to invest for her. Mr. Charlton placed the money, together with money he had inherited, in investment accounts in their joint names. Mr. Charlton managed the accounts. Although some of the income from the accounts was spent for marital purposes, we found the evidence supported Mrs. Charlton's belief that the principal investment would remain in the accounts and was not to be used for marital purposes. We cited *Whiting* for the proposition that "we decline to trace the source of funds in a joint account where that joint account has been utilized as a repository for both marital and nonmarital property." 186 W.Va. at 676, 413 S.E.2d at 917. Therefore, we concluded in Syllabus Point 5 of *Charlton*:

"Where a spouse inherits property and entrusts the investment of that property to the other spouse, who is more financially knowledgeable, and the property itself is not used for marital purposes, the fact that the property is titled in the joint names of the spouses will not convert it to marital property." [15]

**13.** *See* Syl. pt. 2, in part, *John D.K. v. Polly A.S.*, 190 W.Va. 254, 438 S.E.2d 46 (1993) ("When . . . certain evidence that may have affected the outcome of the case was either not considered or was inadequately developed, the court may recommit the matter with instructions to the family law master[.]").

**14.** The fact that the property was acquired for investment purposes "does not rebut the presumption that the purchase of the property, in the name of both [spouses] . . . with money borrowed by the [husband] . . ., was a gift from husband to wife." *Myers v. Myers*, 176 W.Va. 326, 329, 342 S.E.2d 294, 298 (1986).

**15.** In *Charlton*, we found the presumption of gift was inapplicable due to the unique circumstances of the case. The holding is best characterized as an exception to the presumption rule rather than a method of rebuttal. Obviously, it could be argued that the unique circumstances in *Charlton* did no more than explain why a gift was made and this explanation standing alone would have been insufficient to rebut the presumption of gift. Our review of the factual as-

sessment made in *Charlton* is that a fiduciary relationship between the spouses will prevent the operation of the presumption presumably for policy reasons. It is clear that a spouse owed a fiduciary duty is often in a position of great disparity or inequality relative to the other spouse. It would indeed create a great potential for unjust enrichment where the disparity in the relationship has been abused to the benefit of the more powerful spouse. In *Marshall v. Marshall*, 166 W.Va. 304, 308, 273 S.E.2d 360, 363 (1980), we stated:

"The general rule is that where persons occupy a fiduciary or confidential relationship the lack of independent advice on the part of the person who claims to be disadvantaged by the transaction may be a significant factor in a court's evaluation of the overall bona fides of the transaction. (Citations omitted). Here the problem is made more acute by the husband being an attorney."

For these reasons, *Charlton* should be read as an effort to level the playing field where such disparity exists. We, however, are not unmindful of the reasonable argument that unjust enrichment

The facts of cases from other jurisdictions present additional examples of when a spouse did not intend a joint title designation to constitute a gift or transmutation. In *De-Cabrera v. Cabrera–Rosete,* 70 N.Y.2d 879, 524 N.Y.S.2d 176, 518 N.E.2d 1168 (1987), joint title in a cooperative apartment did not constitute a gift to the marital estate when the wife paid the entire purchase price from her separate property. Joint title was taken to satisfy a minimum income requirement for buyers, and the spouses signed a document showing the funds came from the wife's separate estate. In *Mims v. Mims,* 305 N.C. 41, 286 S.E.2d 779 (1982), the property was held jointly because a real estate broker advised the owning spouse that North Carolina law required both spouses to be listed on the deed. The Court in *Mims* did not classify such as marital property because of the lack of donative intent.

In *In re Marriage of Benz,* 165 Ill.App.3d 273, 116 Ill.Dec. 336, 518 N.E.2d 1316 (1988), the Illinois court, faced with facts similar to our case, determined no transmutation took place. The wife, Helen Benz, received over $160,000 from the proceeds of the sale of her family's farm while she was married to her husband, Curtis. After paying the inheritance taxes and giving her children some money, she placed $100,000 in trust in only her name. These funds were later transferred to a jointly held trust. When the couple divorced, the husband argued the facts showed transmutation of the nonmarital funds to the marital partnership. However, "Helen related that Curtis kept 'pestering' her to place the $100,000 in the marital trust. Helen stated she finally agreed to the trans-

fer in order to keep peace in the family, as Curtis had become increasingly verbally abusive.... However, Helen testified it was never her intent to make a gift of the $100,000." 165 Ill.App.3d at 278, 116 Ill.Dec. at 339, 518 N.E.2d at 1319. The appellate court upheld the lower court's finding that the money remained separate property:

"We do not believe the court's decision that petitioner had rebutted the presumption of gift was an abuse of discretion. From the time at which she received the money from the sale of her family farm—less those amounts paid out to the children and kept separate for income tax purposes—petitioner had at all times exhibited a clear intent to keep the funds separate. The terms of the trust itself further evidenced petitioner's desire, as respondent was to obtain the interest alone from it, and not the corpus. It was only upon respondent's insistence at a time when the marriage was admittedly deteriorating and the petitioner's son needed money that the $100,000 was transferred." 165 Ill.App.3d at 280, 116 Ill.Dec. at 340, 518 N.E.2d at 1320.

We believe the essence of the cases cited above is that the presumption of a gift to the marital estate may not be rebutted by evidence that merely reflects the motivation for making the gift or an uncommunicated and subjective state of mind of the transferring spouse [16] or that, when viewed alone, can be considered inconsistent with the intent to maintain the property as separate.[17] Rather, more substantial evidence is required that clearly is indicative of a lack of donative intent.[18] Of course, the best rebuttal evi-

is better taken up at the division stage of equitable distribution rather than as an exception to the presumption of gift. Of course, *Charlton* does not apply to the present case because it is undisputed that the home was used for marital purposes.

16. *Wachter v. Wachter, supra,* states that the presumption of gift is not rebutted by merely an assertion that a spouse did not intend the contributions to be a gift.

17. One such circumstance arises where the parties demonstrates their intention to treat separate property as joint property, *e.g.,* when both spouses take an active interest in the on-going mainte-

nance, management, and control of specific assets. In fact, under the teachings of *Whiting,* the very conveyance of real estate separately owned to the joint title of both spouses evidences an intent that the receiving spouse have an interest in the jointly titled property and would be inconsistent with an intent to maintain the property as nonmarital. A mere showing that the property was once separately owned would be woefully insufficient to rebut the presumption.

18. There must be evidence "demonstrat[ing] [a] specific understanding had been reached by the ... [spouses] that limited ... [one of the spouses'] interest." *Smith v. Smith,* 180 W.Va. 203, 207, 376 S.E.2d 97, 101 (1988).

dence would be an instrument of conveyance or a separate written instrument signed by both spouses with an express provision stating that no gift is intended. *See Wachter v. Wachter,* 178 W.Va. 5, 357 S.E.2d 38 (1987), and *Dodd v. Hinton,* 173 W.Va. 69, 312 S.E.2d 293 (1984) (suggesting that in absence of a written document rebuttal evidence was insufficient). Short of this example, there are no bright-line rules in determining what type of evidence is sufficient to rebut the presumption. It appears that circumstances existing at the time of the transfer indicative of the owner's intention are considered crucial by the courts in determining whether a gift was made to the marital estate.[19]

It is undisputed that Mrs. Burnside furnished from her separate funds the entire consideration necessary to pay off the mortgage on the jointly owned property. The only issue present is her intent at the time she furnished the money to pay off the mortgage. Upon remand, if Mrs. Burnside can prove by competent evidence that she did not intend to make a gift of her money to her husband by paying off the mortgage, then she has rebutted the presumption. If this is done, the rules regarding separate property prevail as to the amount of money used by her to pay off the mortgage.

In proving the lack of donative intent, the West Virginia Rules of Evidence should be followed,[20] particularly the rules governing hearsay and relevancy. Under these rules, to show intent at the time of the transaction in question the parties are entitled to rely on all the attendant facts and circumstances of the transaction.[21] Thus, intent may be shown by evidence of any relevant fact and statement of the parties not barred by the hearsay rule. Most statements offered by one spouse against the other will, if relevant, qualify as a party admission under Rule 801(d)(2) of the West Virginia Rules of Evidence. Normally, to be relevant under Rules 401 and 402, except as to admissions, the proof must be of facts antecedent or contemporaneous with the transaction or so immediately afterwards as to be a significant part of the transaction. It is the intention of the spouses at the time of the transfer that is germane and not how the parties feel later once dissolution of the marriage is probable.

### B.

Application of Equitable Distribution Statute

After we characterized the jointly titled real property in *Whiting* as marital property, we did not discuss in depth the occasions when the distribution of marital property may be altered. Instead, we merely stated that we found no serious attempt was made to offer evidence to rebut the presumption the property should be equally divided. Therefore, we concluded each spouse "was entitled to one-half of the proceeds of the sale of such property." 183 W.Va. at 461, 396 S.E.2d at 423. (Footnote omitted). We now find it necessary to expound upon the circumstances when the distribution of marital property may be altered upon the grounds listed in W.Va.Code, 48–2–32(c) and (d) (1984).

Under W.Va.Code, 48–2–32(c), there is an explicit *presumption* that all property characterized as marital property is to be equally divided.[22] *See also* W.Va.Code, 48–2–32(a)

---

**19.** It is not difficult to understand why there is a paucity of examples demonstrating the quality and quantity of evidence sufficient to rebut the presumption. The marital relationship is a confidential relationship and does not usually require arms-length bargaining. *Marshall v. Marshall,* 166 W.Va. 304, 273 S.E.2d 360 (1980).

**20.** Rule 2 of the Rules of Practice and Procedure for Family Law provides:

"**Applicability of Rules.**

Administrative, procedural, and evidentiary rules promulgated by the supreme court of appeals shall apply to all proceedings within the scope of these rules, except to the extent that they conflict with these rules or with the provisions of chapters 48 and 48A of the Code of West Virginia."

**21.** It must be emphasized that under West Virginia law a gift only can be a voluntary, gratuitous transfer with a requisite intent to irrevocably deliver. Evidence showing the absence of the above would be relevant rebuttal evidence. Intention may be inferred from the relations of the parties and from all the facts and circumstances.

**22.** Equitable distribution is based on the idea of marriage as a partnership in which both spouses contribute to the marital economy, whether directly by employment outside the home or indirectly by providing services within the home.

(1984).[23] This distribution may be altered in certain situations that are set forth in the statute.[24] Thus, to be equitable, the division need not be equal, but, as a starting point, equality is presumptively equitable and any alteration from this presumption must be carefully documented and made without regard to the fault of either party.[25] We summarized the provisions of W.Va.Code, 48–2–32(c), in Syllabus Point 1 of *Somerville v. Somerville,* 179 W.Va. 386, 369 S.E.2d 459 (1988):

> "In the absence of a valid agreement, the trial court [or family law master] in a divorce case shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated fac-

"[I]n adopting the doctrine of equitable distribution, we stated that such doctrine 'rests upon concepts of unjust enrichment[.]' " *Goode v. Goode,* 183 W.Va. 468, 475, 396 S.E.2d 430, 437 (1990), *quoting LaRue* v. LaRue, *172 W.Va. 158, 167, 304 S.E.2d 312, 320 (1983).*

**23.** W.Va.Code, 48–2–32(a), provides: "Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties."

**24.** Under this statute, there is no absolute requirement that each item of marital property be distributed on an equal basis; rather, property acquired during the marriage may be distributed in a manner consistent with the statutory policy that reflects fairness and equity. To this end, family law masters possess the flexibility and discretion to mould a decree appropriate to a given situation with equity being its ultimate goal.

**25.** Syllabus Point 1 of *Charlton, supra,* states: "In enacting our equitable distribution statute, the Legislature did not intend fault to be considered as a factor in determining the division of marital property. However, the Legislature did designate marital fault as a factor to be considered in awarding alimony under the provisions of W.Va.Code, 48–2–15(i)."

**26.** W.Va.Code, 48–2–32(c), states:

> "In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution, without regard to any attribution of fault to either party which may be alleged or proved in the course of the action, after a consideration of the following:

tors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the actual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code § 48–2–32(c) (1986)." [26]

"(1) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by monetary contributions, including, but not limited to:
"(A) Employment income and other earnings; and
"(B) Funds which are separate property.
"(2) The extent to which each party has contributed to the acquisition, preservation and maintenance, or increase in value of marital property by nonmonetary contributions, including, but not limited to:
"(A) Homemaker services;
"(B) Child care services;
"(C) Labor performed without compensation, or for less than adequate compensation, in a family business or other business entity in which one or both of the parties has an interest;
"(D) Labor performed in the actual maintenance or improvement of tangible marital property; and
"(E) Labor performed in the management or investment of assets which are marital property.
"(3) The extent to which each party expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, including, but not limited to:
"(A) Direct or indirect contributions by either party to the education or training of the other party which has increased the income-earning ability of such other party; and
"(B) Foregoing by either party of employment or other income-earning activity through an understanding of the parties or at the insistence of the other party.
"(4) The extent to which each party, during the marriage, may have conducted himself or

Thus, under W.Va.Code, 48–2–32(c), a spouse may offer a variety of evidence to rebut the statutorily created presumption that marital property should be equally divided.

For instance, in the present case, Mrs. Burnside can offer evidence that, although the house is considered marital property under the first step of the process, it should not be equally divided between the parties because she used separate funds to pay off the mortgage. W.Va.Code, 48–2–32(c), gives the court [27] the authority to consider this evidence in deciding how the marital property should be distributed.[28]

After a court considers the factors in subsection (c), the court proceeds to subsection (d) where it must "[d]etermine the net value of all marital property" and define and value each parties' respective interests in the marital property. In cases where there is no valid separation agreement and a court fashions relief based upon the factors in subsection (c), the court may adjust an award under certain circumstances to ensure the parties are treated equitably. These circumstances are set forth in W.Va.Code, 48–2–32(d)(2), which provides in relevant part:

"In the case of an action wherein there is no agreement between the parties and the relief demanded requires the court to consider such factors as are described in subdivision one, two, three and four, subsection (c) of this section, if a consideration of factors only under said subdivisions one and two would result in an unequal division of marital property, and if an examination of the factors described in said subdivisions three and four produce a finding that a party (A) expended his or her efforts during the marriage in a manner which limited or decreased such party's income-earning ability or increased the income-earning ability of the other party, or (B) conducted himself or herself so as to dissipate or depreciate the value of the marital property of the parties, then the court may, in the absence of a fair and just alimony award under the provisions of section fifteen [§ 48–2–15] of this article which adequately takes into account the facts which underlie the factors described in said subdivisions three and four, equitably adjust the definition of the parties' interest in marital property, increasing the interest in marital property of a party adversely affected by the factors considered under said subdivisions three and four who would otherwise be awarded less than one half of the marital property, to an interest not to exceed one half of the marital property."

After the court determines each parties' interest in the marital property, the court should proceed to distribute such property in accordance with the remaining provisions of W.Va.Code, 48–2–32(d)(3)–(7).[29]

---

herself so as to dissipate or depreciate the value of the marital property of the parties: Provided, That except for a consideration of the economic consequences of conduct as provided for in this subdivision, fault or marital misconduct shall not be considered by the court in determining the proper distribution of marital property.".

27. Although the statute uses the term "court," such matters typically are conducted before a family law master who files a recommended order of findings of fact and conclusions of law with the circuit court. See W. Va.Code, 48A–4–1, et seq.

28. The relevant part of W. Va.Code, 48–2–32(c), provides: "In the absence of a valid agreement, the court shall presume that all marital property is to be divided equally between the parties, but may alter this distribution ... after consideration of the following ... (1) ... increase in value of marital property by monetary contributions ... (B) Funds which are separate property."

Thus, even where the evidence is insufficient to rebut the *Whiting* presumption of a gift, it may be sufficient to rebut the statutory presumption under the equitable distribution statute requiring that marital property be evenly distributed between the parties. For example, evidence that one spouse's "contributions" to the marital property were minimal or nonexistent may be a compelling factor supporting a finding that it would be inequitable to distribute the property evenly.

29. There seems to be an anomaly in the statute. W.Va.Code, 48–2–32(d)(2), requires the designation of the marital property. However, prior sections suggest that marital property should be equally divided under subsection (c) or the court should determine the net value of the marital property under subsection (d)(1) without first designating what is included as marital property. The introductory language of subsection (d) explicitly states the court is to consider subsection (c) first. Obviously, this method is unworkable. To avoid an absurd result, we hold that the lower tribunals should take the following steps:

█ The distribution of the marital property, together with the value of each spouse's interest, must be designated in an order. We stated in Syllabus Points 2 and 3 of *Somerville:*

"2. In any order making a division of marital property, the trial court [or family law master] must set out in detail its findings of fact and conclusions of law, and the reasons for dividing the property in the manner adopted. W.Va.Code § 48–2–32(f) (1986).

"3. An order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in § 48–2–32(c), and the facts in the record that support application of those factors."

Findings of facts are adequate only if they are sufficient to indicate the factual basis for the ultimate conclusion. If an order lacks adequate detail, the case will be remanded for additional specificity. *See Pratt v. Pratt,* 193 W.Va. 106, 454 S.E.2d 400 (1994).[30] In this case, the family law master and the circuit court's "findings did not address the parties' actions in the context of W.Va.Code, 48–2–32(d)(2)." *Tallman v. Tallman,* 183 W.Va. 491, 495, 396 S.E.2d 453, 457 (1990).

### III.

### CONCLUSION

Based on the foregoing, we conclude the family law master and the circuit court failed to make sufficient findings to justify their conclusion that Mrs. Burnside's payment of the mortgage on the home in question was

(1) Distinguish between marital and separate property;
(2) Consider any evidence under subsection (c) that may warrant an unequal division of the marital property distinguished in step one;
(3) Value all the marital property identified in step one including that which may be subject to unequal division;
(4) Designate the marital property as determined in step one;
(5) Define each spouse's interest in accordance with step two;
(6) Value each spouse's interest;
(7) Make additional adjustments as are provided in subsection (d)(2).
The above sequence is consistent with Justice Miller's pronouncements in *Whiting* that: (1) distinguish marital property from personal proper-

marital property within the meaning of our equitable distribution law. Accordingly, this case is remanded to the Circuit Court of Ohio County for proceedings consistent with this opinion.

Remanded with directions.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

NEELY, C.J., dissents and reserves the right to file a dissenting opinion.

NEELY, C.J., dissenting:

*Double, Double toil and trouble;*

*Fire burn and cauldron bubble.*

WILLIAM SHAKESPEARE, MACBETH act 4, sc. 1.

Once again the majority stirs the cauldron created by *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990). A mere three months before the separation, Mrs. Burnside succumbed to Mr. Burnside's pressure and used part of her inheritance to pay off the mortgage on the couple's house. The family law master and the circuit court applied the *Whiting* gift presumption and Mr. Burnside was awarded a half-interest in the jointly titled house. Mrs. Burnside cried foul and foul it is!

*Eye of newt, and toe of frog,*

*Wool of bat, and tongue of dog.*

WILLIAM SHAKESPEARE, MACBETH act 4, sc. 1.

ty; (2) value the marital property; and (3) divide the marital property, defining each spouse's interest and the value of such interest and taking into consideration any alterations that may be made under subsections (c) and (d)(2). This statute must be interpreted in the context of the statute's primary goal to devise a practical and simple procedure for equitable distribution of marital property.

**30.** While a family law master must consider all relevant factors before exercising discretion in distributing marital property, it is not necessary to make specific findings as to each statutory factor recited but only those applicable and appropriate to the case.

No easy solution exists under *Whiting*. The majority, concerned about this woman who is "self-employed cleaning houses," added some *unique* items to the mix because *Whiting*'s "coercion, duress, or deception" methods for rebutting the presumption of a gift did not work in this case. But wait, the family law master and the circuit court "failed to make a specific finding regarding Mrs. Burnside's 'intent' to make a gift." Op. at 270.[1] Careful on remand, because the cauldron of *Whiting* refuses to accept the "estate planning" or "adverse consequences" explanation. Op. at 271. The majority hints of an "unjust enrichment ... at the division state of equitable distribution" (Op. at 271 n. 15) loophole, which might be used to bring some equity to *Whiting*.

> *Out, damned spot! out, I say!*
>
> WILLIAM SHAKESPEARE, MACBETH act 5, sc. 1.

*Whiting* undermines family security by refusing to recognize that married persons title property jointly to: (1) reassure a spouse of a marital commitment; (2) ease the management of the property; (3) protect property from creditors; and, (4) take advantage of federal estate tax laws. Mrs. Burnside used her inheritance to reassure Mr. Burnside of her commitment to their marriage. Mrs. Burnside should not be penalized for her efforts. An exception was crafted to protect Mrs. Charlton who entrusted the investment of her inheritance to Mr. Charlton. *See Charlton v. Charlton*, 186 W.Va. 670, 413 S.E.2d 911 (1991). *See Whiting, supra*, 183 W.Va. at 464–65, 396 S.E.2d at 426–27 (Neely, C.J., dissenting for a discussion of the incentives to title property jointly).

> *Who would have thought the old man to have*
>
> > *had so much blood in him?*
>
> WILLIAM SHAKESPEARE, MACBETH act 5, sc. 1.

I dissent because the tragedy of *Whiting* continues. The bloodstains are not easily removed. The Mrs. Burnsides, Mrs. Carltons and others going through a divorce should not be required to seek a handcrafted *Whiting* loophole or exception. We could, of course, write the following sex-neutral syllabus point to accommodate the *Charlton* and *Burnside* gloss on *Whiting*:

> Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the marital estate is consistent with the principles underlying our equitable distribution statute unless the transfer is made to the phallically challenged spouse by the phallically advantaged spouse.

*See*, Syl. pt. 4, *Whiting, supra*.

---

1. The facts of this case required the majority, after citing the standard of review, to apply a more stringent standard because *Whiting* requires the inequitable result reached below.

There was no abuse of discretion, no clear error in determining the facts; there was only the logical and inequitable consequences of *Whiting*.