465 S.E.2d 625

**Kathy F. LEWIS, Plaintiff Below, Appellant,**

v.

**Timothy F. LEWIS, Defendant Below, Appellee.**

No. 22682.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Nov. 17, 1995.

---

Jack Alsop, Webster Springs, for Appellant.

William W. Talbott, Webster Springs, for Appellee.

PER CURIAM:

■ This is a sequel to this Court's decision in *Lewis v. Lewis,* 189 W.Va. 598, 433 S.E.2d 536 (1993), in which we concluded upon an appeal by the husband, Timothy F. Lewis, that the trial court had erred in applying a "best interest of the child" standard for custody of a young child rather than the primary caretaker rule as set out in syllabus point 2 of *Garska v. McCoy.* 167 W.Va. 59, 278 S.E.2d 357 (1981):

> With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit.

We remanded the case for application of the primary caretaker rule. In this appeal, the appellant, Kathy F. Lewis, claims that the circuit court erred in finding that the appellee, Mr. Lewis, was the primary caretaker and a fit person to have custody of their child. We disagree and affirm the circuit court's judgment.

On remand, the circuit judge did not take additional evidence. Instead, by order entered on May 3, 1994, he reversed his previous decision. The judge stated that he was denying the appellant's exceptions to the family law master's recommendations, which awarded the custody of the infant child to the child's father. This was based on the court's acceptance of the original finding of the family law master that Timothy F. Lewis was a fit person and had, in fact, been the primary caretaker of the child.

■ Recently, in syllabus point 1 of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), we established our general standard of review of a circuit court's order

affirming the finding of the family law master:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Although *Burnside* dealt with an equitable distribution issue, its principles would apply to child custody questions of the type involved in the present case.

On July 9, 1991, the appellant filed a divorce complaint against her husband, the appellee, which alleged that her husband had been guilty of cruelty toward her. In the complaint, she prayed for custody of their only child, Amber Dawn Lewis, who was then four years of age. The appellee filed an answer and a counterclaim, and he also prayed for custody of the child.

■ The evidence shows that when the parties' child was born, the appellant was employed at a bank and the appellee was unemployed. From shortly after the time of birth, the appellee cared for her while the appellant continued working for the bank. When asked how he cared for the child, the appellee testified:

> I fed her bottle, got her bottles ready, I done all of it, changed her diapers, cooked for her, I've bathed her, I put her to bed, I've washed her clothes, I've cleaned her room, I've done all that.

Some eight weeks after the child was born, the appellant quit her job at the bank to stay home with the child. Shortly thereafter, however, she went to work for Rite Aid Pharmacy. The appellee remained unemployed and continued to care for the child. The evidence showed that the appellant often worked until 9:00 p.m. and that at such times the appellee would cook and care for the child and that the appellant would have only a brief period of time with her before she went to bed. When asked: "[S]o basically, most of the time since Amber [the child] was born, you've been steadily employed?" The appellant responded, "Yes, I have."

There was an occasion when the child was two and one-half to three years old that the appellee obtained work in North Carolina for about a six-month period. At that time, he did not take care of the child, although the appellant and the child were with him a part of the time in North Carolina. Although he occasionally worked sporadically thereafter, the evidence showed that during such times a babysitter cared for the child during the day and that both he and the appellant would care for her after work, except on those occasions when the appellant worked overtime or worked late, when the appellee alone cared for the child.

At the final hearing in the case, the appellant testified that she had ceased working and that she was residing in Morgantown. Also, the appellant's sister, Janet Marie Sill, who lived across the street from the parties while they were living together and who had had occasion to be in their home, testified that the child had a close relationship with both of the parties and stated: "I guess you could say she's a 'daddy's girl' because she does side with her daddy a lot, she does well with both of them, she likes to be with her mother, too."

The family law master in the case, after hearing the evidence, came to this conclusion and awarded custody to the father:

> This is a case that the plaintiff's own testimony establishes that the defendant has been the primary caretaker except for about perhaps the last three (3) months and a six (6) month period while he was down in North Carolina, but that sort of leaves a very large majority of the time, just because of the work schedules of the parties ... there is no question of fitness in this case ... so the defendant has been the primary caretaker, the defendant will have ... custody....

■ In applying the *Burnside* standard of review, it is clear that there is no disputed

issue of law for us to review. As previously indicated, syllabus point 2 of *Garska v. McCoy, supra,* indicates that custody should be awarded to the primary caretaker if he or she is a fit person. Syllabus point 3 of *Garska* and its progeny [1] indicate:

> The primary caretaker is that natural or adoptive parent who, until the initiation of divorce proceedings, has been primarily responsible for the caring and nurturing of the child.

Additionally, syllabus point 4 of *David M. v. Margaret M.,* 182 W.Va. 57, 385 S.E.2d 912 (1989), indicates:

> In West Virginia we intend that generally the question of which parent, if either, is the primary caretaker of minor children in a divorce proceeding is proven with lay testimony from the parties themselves and from teachers, relatives and neighbors. In most cases, the question of which parent does the lion's share of the chores can be answered satisfactorily and quickly. Once the primary caretaker has been identified, the only question is whether that parent is a "fit parent." In this regard, the court is not concerned with assessing relative degrees of fitness between the two parents such as might require expert witnesses, but only with whether the primary caretaker achieves a passing grade on an objective test.

The facts in the present case are not substantially disputed, and we cannot find that the family law master's conclusions adopted by the circuit court were clearly erroneous, given the evidence of the appellee's involvement in the care of the child and his fitness. Finally, we can find no abuse of discretion on the part of the trial court.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Webster County.

Affirmed.

1. *See, e.g., Michael Scott M. v. Victoria L.M.,* 192 W.Va. 678, 453 S.E.2d 661 (1994); *Shearer v. Shearer,* 191 W.Va. 734, 448 S.E.2d 165 (1994); *Cummings v. Cummings,* 188 W.Va. 713, 426 S.E.2d 505 (1992); *T.S.K. v. K.B.K.,* 179 W.Va. 641, 371 S.E.2d 362 (1988); and *Wagoner v. Wagoner,* 172 W.Va. 687, 310 S.E.2d 204 (1983).

ALBRIGHT, J., did not participate in the consideration or decision of this case.

MILLER, Retired Justice, sitting by temporary assignment.